**Doak WALKER and Maurice Turner, Plaintiffs–Appellees,**

v.

**R. SCHAEFFER, Patrolman, and J. Sheridan, Patrolman, Defendants–Appellants.**

No. 87–3383.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 25, 1988.

Decided Aug. 12, 1988.

Richard R. Strong, Roetzel & Andress, Akron, Ohio, Drew Carson (argued), Cleveland, Ohio, for defendants-appellants.

Harry W. Schmuck (argued), Canton, Ohio, for plaintiffs-appellees.

Before KRUPANSKY and WELLFORD, Circuit Judges, and GILMORE, District Judge.[*]

WELLFORD, Circuit Judge.

Plaintiffs, Doak Walker and Maurice Turner, sued two police officers, defendants Schaeffer and Sheridan, under 42 U.S.C. § 1983 for false arrest, detention, and imprisonment in violation of their constitutional rights. Walker was arrested for disorderly conduct in a McDonald's parking lot following a high school football game, and Turner was arrested for reckless driving following Walker's arrest. The plaintiffs' arrests were related to the presence and actions of a primarily white crowd in the parking lot that apparently threatened the plaintiffs, both of whom are black. The defendant police officers, who are white, moved for summary judgment following discovery, claiming that on the basis of undisputed facts they had probable cause to make the arrests and thus were entitled to the defense of qualified immunity. The district court denied the motion, finding that there existed genuine issues of material fact in dispute that bore on the question of whether a reasonable police officer would have believed that probable cause existed for the arrests of plaintiffs effectuated by the defendants. The parties' versions of the facts of this episode differ considerably.

Walker and Turner, both of Canton, Ohio, pulled into the parking lot of a McDonald's in Austintown, Ohio, at approximately 10:30 on a Friday night following a high school football game between a Canton high school and Austintown. Walker parked his car and was going to leave Turner in the car and go into the McDonald's. Officer Sheridan, according to Walker's deposition, grabbed Walker by the chest through the open car window and told him to repark the car properly in a lined space. Walker complied by realigning his car.

Walker started to go into the McDonald's, but turned back before he went inside. At the time, a crowd of several hundred white Austintown high school students was gathered in the McDonald's parking lot. Again, according to Walker's deposition, as he started to walk back toward his car, the crowd closed behind him hindering his return. He heard members of the crowd making racial comments. In order to get back to the car he was forced

[*] The Honorable Horace W. Gilmore, U.S. District Judge for the Eastern District of Michigan, sitting by designation.

to push his way through the crowd. Officer Sheridan's police report and affidavit, by contrast, stated that Walker was shouting at people in the crowd and pushing them in an attempt to pick a fight.

Walker testified that once he got back in his car, he planned to leave, but that the crowd had completely surrounded his car and was kicking, pounding, and spitting on his car. Officer Sheridan then approached the car and allegedly ordered Walker to leave the premises. Walker said that he put his car into reverse, but could not back up without striking one of the crowd around the car. According to Walker's testimony, Officer Sheridan again grabbed him by the chest and ordered him out of the car. As he was getting out of the car in response to these directions, the crowd was chanting "Arrest the nigger. Arrest the nigger." Sheridan arrested Walker for disorderly conduct and led him inside the McDonald's restaurant. Sheridan's statement was that he advised Walker several times to get into his car and leave, and that Walker's failure promptly to leave in light of the threatening circumstances resulted in his arrest for disorderly conduct.

As Walker was being arrested, Turner, according to his own deposition, got out of the car and asked Officer Sheridan what was going on. Sheridan told Turner that Walker was being arrested and that Turner had better get out of there before he was arrested also. Turner then got back into the car, which was still surrounded by the crowd, and as Sheridan led Walker into the McDonald's, Turner decided to try to get away from the threatening crowd. Turner backed the car up and then pulled out into traffic as people from the crowd were running alongside the car and throwing objects at it. As Turner backed up and then left the lot, he allegedly struck several members of the crowd. Turner stated that he soon realized he was heading the wrong direction on the street and turned around in a parking lot about 700 yards away from the McDonald's. He asserts that as he drove back past the McDonald's, members of the crowd came back out on the street to throw things at his car and that he swerved across the center line in order to avoid

hitting them or being hit. Defendants by affidavit asserted that Turner twice spun the car completely around in traffic and drove away in the wrong lane of traffic. Turner denied spinning the car.

Turner in due course drove to the Austintown police station to inquire about his companion, Walker. He was then arrested for reckless driving and held in a cell for four hours. Both plaintiffs assert separate claims arising out of the alleged false arrest and wrongful imprisonment.

The complaint sets out that in response to the charges placed against them they appeared in Mahoning County Court for a trial. Both were represented by an attorney, and prior to the hearing there was a conference among the prosecutor, the attorney or attorneys for Walker and Turner, and Schaeffer and Sheridan, defendants in the instant action. Plaintiffs assert that defendants stated that they ordered plaintiffs away from the McDonald's premises "solely in order to save the lives of Doak Walker and Maurice Turner." (Complaint, paragraph 15.) The complaint proceeds to admit that both plaintiffs agreed to enter "no-contest pleas in open court." The complaint goes further to admit that plaintiffs did enter the pleas and that "the Court found [them] guilty and sentenced each of them to pay a fine." (Complaint, paragraph 16.) In their depositions each plaintiff admitted paying the fine assessed. The complaint asserts that plaintiffs "have appealed their convictions." (Complaint, paragraph 16.) Although more than two years have since elapsed, we are not advised whether the alleged appeal was pursued or of its outcome. We are not advised as to the contentions made or asserted on appeal or whether plaintiffs may have abandoned the appeal. In any event, there is no contrary assertion but that plaintiffs, by their own actions on advice of counsel, in effect admitted a factual basis for the as yet undisturbed determination of guilt on the offenses charged against them.

Defendants argue that the district court, as a matter of law, should have found, based on the material facts that are not essentially disputed in this case, that the

officers acted reasonably in believing that probable cause existed for the arrests of both Walker and Turner. They assert that summary judgment for Sheridan and Schaeffer on qualified immunity grounds was appropriate. The district court, however, determined that the pleadings and plaintiffs' depositions raised genuine issues of material fact regarding the applicability of qualified immunity.

The Court must determine whether a reasonable officer, knowing what Officer Sheridan and Officer Schaeffer knew at the time of the arrest and the issuance of the citation, would have known that no probable cause supported the arrest or the issuance of the citation, in deciding whether the officers are entitled to qualified immunity. Where the facts depicting the events leading up to the arrest are disputed by the parties, and are as markedly different as the versions are in this case, the Court is unable to determine whether a reasonable officer would have acted as Officer Sheridan did when he arrested plaintiff Walker, and as Officer Schaeffer did when he issued the citation to plaintiff Turner. Thus, there being a genuine dispute about the facts, the Court is unable to determine on the record before it whether a reasonable police officer would have known that no probable cause to arrest or to issue a citation existed under the circumstances. Accordingly, the Court denies summary judgment to defendants Sheridan and Schaeffer on their claim of qualified immunity.

In *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), the Supreme Court described the points before trial at which a government defendant may be entitled to the defense of qualified immunity:

> Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery. Even if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts.

*Id.* at 526, 105 S.Ct. at 2815 (citation omitted). Thus, the trial court in a case like this one must decide whether—if the plaintiffs are able to prove all of their allegations—the defendants' conduct violated a clearly established right of the plaintiffs. The question before the court, therefore, is essentially a legal question: whether the defendants' actions violated the plaintiffs' clearly established constitutional rights. *See Dominque v. Telb*, 831 F.2d 673, 677 (6th Cir.1987).

In the instant case, Walker and Turner assert that Sheridan and Schaeffer violated their clearly established rights by arresting them without probable cause and then placing them in jail. Sheridan and Schaeffer point to several undisputed facts (*e.g.*, that Walker did not leave the premises when ordered to do so and that Turner himself admitted that he crossed the center line while driving), as sufficient indicia of probable cause to make it reasonable for them to believe that the arrests did not violate the plaintiffs' rights. Plaintiffs conceded in their depositions that they felt threatened by the unruly crowd and that defendants made some attempt, although inadequate from plaintiffs' viewpoints, to control the crowd.

We apply the same standard in reviewing the district court's decision on defendants' motion for summary judgment as is applied by the trial judge. See Wright, Miller & Kane, *Federal Practice and Procedure* § 2716 (1983); *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir.1987); *Hines v. Joy Manufacturing Co.*, 850 F.2d 1146, (6th Cir.1988). If there is an absence of evidence to show that the defendants "falsely" or without probable cause arrested plaintiffs, then even if plaintiffs' proof is construed favorably, there is no genuine issue of material fact for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). More significant, however, is that each plaintiff, in effect, admitted facts in open

court evidencing his guilt, and the state court found both Walker and Turner guilty of the offenses charged against them by defendant officers. They were each fined, and each paid his fine. Neither asserted that the state court's action was motivated by any racial consideration whatever, and the court was advised of the circumstances of the confrontation between the parties to this appeal.

Having voluntarily entered these pleas in state court and having been found guilty of the charges against them, are plaintiffs now estopped from seeking damages resting upon claims based upon alleged false arrest and false imprisonment?

A state court judgment must be given the same preclusive effect in federal court that it would be given in the courts of the rendering state. *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 85, 104 S.Ct. 892, 898, 79 L.Ed.2d 56 (1984); *City of Canton v. Maynard*, 766 F.2d 236, 237 (6th Cir.1985) (per curiam); *Fellowship of Christ Church v. Thorburn*, 758 F.2d 1140, 1144 (6th Cir.1985) (per curiam). This principle applies to civil rights actions under section 1983 with respect to issues actually litigated (collateral estoppel or issue preclusion) and issues which could have been but were not litigated in the state court proceeding (res judicata or claim preclusion). *Migra*, 465 U.S. at 81–85, 104 S.Ct. at 896–98; *Maynard*, 766 F.2d at 238. Giving preclusive effect to state court judgments is, however, inappropriate "where the party against whom an earlier court decision is asserted did not have a full and fair opportunity to litigate the claim or issue decided by the first court." *Allen v. McCurry*, 449 U.S. 90, 101, 101 S.Ct. 411, 418, 66 L.Ed.2d 308 (1980); *see also Haring v. Prosise*, 462 U.S. 306, 313, 103 S.Ct. 2368, 2373, 76 L.Ed.2d 595 (1983); *Thorburn*, 758 F.2d at 1144.

*Vinson v. Campbell County Fiscal Court*, 820 F.2d 194, 197 (6th Cir.1987).

■ Res judicata is not applicable in this case because the issue here is not the same as in the state's criminal actions against plaintiffs. *Id.* at 197. Collateral estoppel principles, however, may apply if Walker and Turner in the state proceeding had a "full and fair opportunity to litigate" the issues involving whether defendants, or either of them, falsely arrested and/or falsely imprisoned plaintiffs. Plaintiffs' vindication by acquittal would, of course, have a direct bearing on whether either defendant had falsely arrested (or falsely imprisoned) plaintiffs. "A false arrest is one means of committing a false imprisonment, but ... a distinction has been drawn between the two in that a false arrest must be committed under assumption of legal authority...." 35 C.J.S. *False Imprisonment* § 2 (1960). Here the nature of the claims of false arrest and false imprisonment by police officers acting while on duty are essentially the same since the alleged false imprisonment arises out of and logically follows the arrest of plaintiffs. *See Whirl v. Kern*, 407 F.2d 781, 790 (5th Cir.1968), *cert. denied*, 396 U.S. 901, 90 S.Ct. 210, 24 L.Ed.2d 177 (1969); *Alter v. Paul*, 101 Ohio App. 139, 135 N.E.2d 73 (1955); *Martell v. Chisholm*, 384 F.Supp. 1224 (W.D.Pa.1974), *aff'd without op.*, 517 F.2d 1398 (3d Cir.1975).

The Supreme Court has held that police officers' defense of "good faith" and "probable cause," which is available in common-law claims of false arrest and false imprisonment made against them, "is also available to them in the action under § 1983." *Pierson v. Ray*, 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288 (1967); *see also Whirl*, 407 F.2d at 790. We hold that the pleas in state court made by defendants and the finding of guilt and imposition of fines by that court estop plaintiffs from now asserting in federal court that the defendant police officers acted without probable cause.

A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does.

*Pierson v. Ray*, 386 U.S. at 555, 87 S.Ct. at 1218. As emphasized in *Whirl*, "[a]n arrest is often a stressful and unstable situation calling for discretion, speed, and on-

the-spot evaluation." 407 F.2d at 790. Insofar, then, as the cause of action under § 1983 is based on claims of false arrest and/or false imprisonment, or unlawful detention, plaintiffs are estopped from pursuing these claims for the reasons indicated.[1] There has been no indication that in state court plaintiffs, then represented by counsel, did not have a reasonable and fair opportunity to litigate their contentions that defendants violated their constitutional or lawful rights under the circumstances of their arrest and detention.[2] *Cf. Coogan v. City of Wixom*, 820 F.2d 170 (6th Cir. 1987) (finding § 1983 claim for malicious prosecution collaterally estopped where plaintiff had contested probable cause issue at state court preliminary hearing); *State v. Pernell*, 47 Ohio App.2d 261, 353 N.E.2d 891 (1976) (a no contest plea is an admission of the truth of the facts underlying the criminal charge). We believe that under Ohio law, if applied as set out in *Migra*, defendants have made out a qualified immunity defense under the circumstances.

■ We also agree with the conclusion reached in *Cameron v. Fogarty*, 806 F.2d 380 (2d Cir.1986), *cert. denied*, — U.S. ——, 107 S.Ct. 1894, 95 L.Ed.2d 501 (1987):

> [W]e conclude that the proper accommodation between the individual's interest in preventing unwarranted intrusions into his liberty and society's interest in encouraging the apprehension of criminals requires that § 1983 doctrine be deemed, in the absence of any indication that Congress intended otherwise, to incorporate the common-law principle that, where law enforcement officers have made an arrest, the resulting conviction is a defense to a § 1983 action asserting that the arrest was made without probable cause.

*Id.* at 388–89. *See also Martin v. Delcambre*, 578 F.2d 1164 (5th Cir.1978). We find this to be a sound basis for the claim of qualified immunity here.

■ We do not consider our conclusion to be barred by Fed.R.Evid. 410, which provides that evidence of "a plea of nolo contendere" is not, "in any civil or criminal proceeding, admissible against the defendant who made the plea." This case does not present the kind of situation contemplated by Rule 410: the use of a nolo contendere plea against the pleader in a subsequent civil or criminal action in which he is the *defendant. See, e.g., United States v. Manzella*, 782 F.2d 533 (5th Cir.), *cert. denied*, 476 U.S. 1123, 106 S.Ct. 1991, 90 L.Ed.2d 672 (1986) (use of nolo contendere plea to impeach defendant in subsequent criminal prosecution). In this case, on the other hand, the persons who entered prior no-contest pleas are now plaintiffs in a civil action. Accordingly, use of the no-contest plea for estoppel purposes is not "against the defendant" within the meaning of Fed.R.Evid. 410. This use would be more accurately characterized as "for" the benefit of the "new" civil defendants, the police officers.

We find a material difference between using the nolo contendere plea to subject a former criminal defendant to subsequent civil or criminal liability and using the plea as a defense against those submitting a plea interpreted to be an admission which would preclude liability. Rule 410 was intended to protect a criminal defendant's use of the nolo contendere plea to defend himself from future civil *liability*. We decline to interpret the rule so as to allow the former defendants to use the plea offensively, in order to obtain damages, after having admitted facts which would indicate no civil liability on the part of the arresting police.

We accordingly reverse the decision of the district court, concluding that the offi-

---

1. Under Ohio law, "[a] guilty finding in a criminal proceeding, whether by trial or plea, constitutes an absolute defense to an action for false arrest or false imprisonment." 45 Ohio Jur.3d. *False Imprisonment* § 10. See *Ryan v. Conover*, 59 Ohio App. 361, 18 N.E.2d 277 (1938).

2. There is no allegation that the defendant officers, in contrast to the crowd at McDonald's in Austintown, made racial slurs or acted with racial animosity in respect to the arrests at issue. Rather, the officers claimed at the state court hearing that they acted to protect plaintiffs, who were threatened by a hostile group.

cers' actions lie within the scope of the doctrine of qualified immunity as claimed and that defendants' motion for summary judgment should have been granted. We therefore remand the case to the district court for further proceedings consistent herewith.