**Shirley FENSTERMAKER, Plaintiff,**

v.

**The CITY OF DAYTON, OHIO, et al., Defendants.**

**No. C-3-87-532.**

United States District Court,
S.D. Ohio, W.D.

Aug. 17, 1988.

Matthew J. Crehan, David H. Landis, Hamilton, Ohio, for plaintiff.

Shirley Fenstermaker, Dayton, Ohio, pro se.

Neil F. Freund, Jane M. Lynch, Dayton, Ohio, for defendants.

DECISION AND ENTRY SUSTAINING MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS CARLENE NAVARRE, CAROL PAULEY, BARBARA BENT AND THE CITY OF DAYTON FOR SUMMARY JUDGMENT (DOC. # 6); JUDGMENT TO BE ENTERED FOR SAID DEFENDANTS AND AGAINST THE PLAINTIFF; DECISION AND ENTRY DISMISSING, *SUA SPONTE*, THE POLICE DEPARTMENT OF THE CITY OF DAYTON AS A PARTY DEFENDANT FOR THE REASON THAT SAID DEFENDANT IS NOT A SUABLE ENTITY; TERMINATION ENTRY

RICE, District Judge.

The captioned cause came on to be heard upon the Motion of the Defendants, City of Dayton, the Police Department of the City of Dayton, Officer Carlene Navarre and Officer Carol Pauley, seeking an Order of the Court granting summary judgment in their favor and against the Plaintiff (Doc. # 6).[1] Based upon the reasoning and cita-

---

1. The Plaintiff has sued the City of Dayton, the Police Department of the City of Dayton, Officer C. M. Navarre and Officer C.J. Pauley, as well as a "Sgt. Jane Doe." "Sgt. Jane Doe" has not

tions of authority set forth below, this Court (1) sustains the aforementioned motion as it applies to Carlene Navarre, Carol Pauley, Barbara Bent and the City of Dayton; and (2) dismisses, *sua sponte* the Police Department of the City of Dayton as a party Defendant, for the reason that said Defendant is not a suable entity.

1. The Plaintiff has filed a Complaint containing five claims for relief, to wit:

a. a federal claim for relief, under 42 U.S.C. § 1983, contending that she was deprived of her constitutional right to be free from false arrest, by the Defendant police officers acting under color of law;

b. a claim for municipal liability, under both state and federal law, against the City of Dayton;

c. a claim for false arrest under state law;

d. a state law claim for intentional infliction of serious emotional distress; and

e. a state law claim for the negligent infliction of severe emotional distress.

2. The three police officers—Navarre, Pauley and Bent—are sued in their official capacities, as employees of the City of Dayton, acting within the scope and course of their employment at all times pertinent to this case. (Doc. #1, Complaint, ¶ 3).

3. The Defendant police officers base their claim to summary judgment upon the doctrine of qualified or good-faith immunity. (Doc. #6, p 5) The doctrine of qualified immunity was set forth in the seminal opinion of *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1980) as follows: "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct.

at 2738. The doctrine has been further developed in *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), (involving law enforcement officials) and, most recently, in *Poe v. Haydon,* 853 F.2d 418, (6th Cir.1988), (an action under 42 U.S.C. § 1983).

4. The Plaintiff, in opposing the Defendant police officers' Motion for Summary Judgment, contends that summary judgment cannot be granted to Defendant police officers on the doctrine of qualified immunity because: (1) there are genuine issues of material fact on whether there was probable cause for the Defendants to have made the warrantless arrest of the Plaintiff in her home (Doc. #13) and (2) there is a clearly established right under Ohio statutory law and the fourth amendment to the United States Constitution to be free from warrantless arrests without probable cause, a right which Plaintiff claims was violated by the Defendant officers, thus making it legally impossible for them to claim the benefit of the defense of qualified immunity.

5. Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

In cases in which facts are disputed, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.... The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). "[T]he

joined the other Defendants in their Motion for Summary Judgment. Although no amendment to the Complaint has been sought by the Plaintiff to substitute the subsequently identified police sergeant in place of "Sgt. Jane Doe," it is clear from a reading of the memoranda filed by the moving Defendants in support of their Motion for Summary Judgment (*see* Affidavit C,

attached to the Memorandum filed in support of the Defendants' Motion for Summary Judgment (Doc. #6)), that "Sgt. Jane Doe" is, in reality, Sgt. Barbara Bent. This Court assumes, and will continue to assume unless advised to the contrary, that the Defendants intend their Motion for Summary Judgment to be filed on behalf of Sgt. Barbara Bent as well.

mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.... Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Id.* at 247–48, 106 S.Ct. at 2509–10.

6. Adopting as true the facts as set forth by Plaintiff in her affidavit (Doc. # 13, Exhibit 1) and construing those facts and every reasonable inference to be drawn therefrom in her favor, see *Liberty Lobby* at 255, 106 S.Ct. at 2514, the Court deems the following to be the material facts pertinent to the issues formed by the Defendants' Motion for Summary Judgment:

a. The Plaintiff was visited by one Kathy Smith, a former tenant, who wished to pick up her welfare check which had been directed to her former address, an apartment owned by the Plaintiff.

b. The Plaintiff explained to Kathy Smith that she had attempted to reach her by telephone and, that having proved futile, she (the Plaintiff) put the check, unopened, into a mailbox, after first writing on the envelope: "No longer at that address."

c. Although the Plaintiff told Kathy Smith on several occasions that she no longer had the check, Kathy Smith was unwilling to accept that explanation and when she refused to leave the Plaintiff's premises, the Plaintiff called the Dayton Police Department to seek its assistance in forcing Kathy Smith to leave.

d. The Plaintiff told Officers Navarre and Pauley, upon their arriving at her home, that she no longer had Kathy Smith's welfare check. The Plaintiff never, in any fashion, indicated to either Kathy Smith or to the officers that she still had the check in her possession.

e. Kathy Smith told Officers Navarre and Pauley that she had seen the welfare check on the Plaintiff's desk. Although that desk and the papers thereon were in plain view, so that presumably the officers could verify Kathy Smith's story of having seen the check, neither Officers Navarre and Pauley nor Sgt. Bent, who arrived at the scene a few moments thereafter, ever asked to examine the desk or the papers thereon.

f. The police asked Kathy Smith what she wanted; she responded that she wanted her check. Kathy Smith ultimately told the officers that she wished to file charges against the Plaintiff. The Plaintiff was then handcuffed, taken to the police station and told that she was being charged with the felony of grand theft.

7. In addition to the foregoing (the Plaintiff's version of the facts, construed most strongly in her favor and giving her the benefit of every reasonable inference to be drawn therefrom), this Court takes judicial notice of the fact that Ohio Rev.Code Ann. § 2913.71(B) makes it a felony of the fourth degree for any one to obtain or exert control over a check belonging to another without that other's consent.

8. In arguing that Defendants herein are not entitled to claim the defense of qualified immunity while there remains some dispute as to the facts underlying the validity of the arrest, the Plaintiff misconstrues the standard for determining the availability of qualified immunity. The focus is not on whether, after a final determination of the facts, the Court could conclude that a constitutional violation had taken place, but rather, "the trial court in a case like this one must decide whether—if plaintiff[ ] [is] able to prove all of [her] allegations—the defendants' conduct violated a *clearly established* right of the plaintiff[ ]. The question before the court, therefore, is essentially a legal question." *Walker v. Schaeffer*, 854 F.2d 138, 141 (6th Cir.1988).

The Sixth Circuit has recently re-emphasized the Supreme Court's determination that "qualified immunity is not simply a defense to liability on the merits, but is in fact 'an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established laws.... The entitlement is an *immunity from suit* rather than a mere defense to liability.'" *Poe v. Hay-*

*don,* 853 F.2d 418, 424 (6th Cir.1988); *quoting Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985).

■ The doctrine of qualified immunity seeks to ensure that officials are not unnecessarily inhibited in the performance of discretionary functions by "fear of monetary liability or the diversions inherent in litigation. . . . The doctrine reflects the belief 'that officials can act without fear of harrassing litigation only if they reasonably can anticipate when their conduct may give rise to liability for damages and only if unjustified lawsuits are quickly terminated.'" *Poe* at 423, *quoting from Davis v. Scherer,* 468 U.S. 183, 195, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984). *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), itself defined (within the facts of that case) the test for "clearly established law" not in terms of the generally recognized right to be free from warrantless searches, but rather whether one seeking qualified immunity can establish as a matter of law that a reasonable officer could have believed that the search in question comported with the fourth amendment, even though it actually did not. *Anderson* opined that "[i]n order to conclude that the right which the official allegedly violated is 'clearly established,' the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson* at 3039. "A court must," continued *Anderson,* "consider the argument, not merely that it *is* clearly established that one has the right to be free from warrantless searches [herein read arrests] absent probable cause or exigent circumstances, but also [in order to find a claim of qualified immunity to be well taken] that it was *not* clearly established that the circumstances under which the official or officer was confronted at the time of the challenged action did *not* constitute probable cause or exigent circumstances. The relevant question . . . is the objective question [of] whether a reasonable officer could have believed the warrantless search to be lawful, in the light of clearly established law and the information possessed by the

officer or officers." *Id.* (Emphasis added.)

■ 9. Applying the lessons of *Anderson* to the relevant and material facts which constitute the circumstances surrounding the warrantless arrest in this case (*see* Section 6, *supra*), it is clear that the Defendant police officers, Navarre, Pauley and Bent, are entitled to summary judgment on the basis of qualified immunity on the federal claim. Based upon the Plaintiff's version of the facts as set forth in her affidavit, construing that evidence most strongly in her favor and giving her the benefit of every reasonable inference to be drawn therefrom, it is clear as a matter of law that:

a. A reasonable police officer could have believed that there was probable cause to believe a crime had taken or was taking place, and therefore that the arrest of the Plaintiff comported with the fourth amendment. Kathy Smith, the complaining witness, told the officers who had been called to the scene by Plaintiff, that she had seen the welfare check in question and that it was in the very room in which the confrontation between the Plaintiff and the Defendant officers was taking place.

Probable cause has been defined in terms of "facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Gerstein v. Pugh,* 420 U.S. 103, 111–12, 95 S.Ct. 854, 861–62, 43 L.Ed.2d 54 (1975). "This is to say that the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient in themselves to warrant a man of reasonable caution in the belief that [an offense had been committed or was being committed]". *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925). The statement of Kathy Smith is one which the officers could well have concluded constituted probable cause to believe that the felony of grand theft had taken or was taking place.

b. Based upon all of the aforesaid, this Court concludes, as a matter of law, that at the time in question, it was *not* clearly

established that the circumstances with which the police officers were confronted, as alleged by Plaintiff, did not constitute probable cause to make an arrest, such that Plaintiff's right to be free from unreasonable seizures was violated. As a matter of law, objectively and without any reference to the Defendant police officers' subjective beliefs, a reasonable officer could have believed the warrantless arrest of the Plaintiff to be lawful. Where "there is an absence of evidence to show that the defendants 'falsely' or without probable cause arrested plaintiff[ ], then even if plaintiff['s] proof is construed favorably, there is no genuine issue of material fact for trial." *Walker v. Schaeffer*, 854 F.2d 138, 141 (6th Cir.1988). Qualified immunity is, accordingly, available to these officers as an absolute defense on the Plaintiff's federal claim.[2]

■ 10. A finding that individual police officers' actions, in their official capacity as sworn officers of a municipality, are entitled to qualified immunity as to Plaintiff's claim under 42 U.S.C. § 1983 is *not* dispositive of the officers' liability as to Plaintiff's claims against them under state law, or of the municipality's potential liability under federal and state law claims. Qualified immunity protects the individual police officers from liability under federal law for their official actions, if said actions do not violate clearly established legal, statutory or constitutional rights. However, Ohio "common law has not developed a tradition of official immunity for police officers,"

*Neiswender v. Edinger*, 59 Ohio App.2d 25, 392 N.E.2d 580, 582 (1978); and police officers are susceptible to suit on state law claims of arrest without probable cause. *See Neff v. Palmer*, 78 O.L.Abs. 34, 152 N.E.2d 719 (1956), *Ryan v. Conover*, 59 Ohio App. 361, 18 N.E.2d 277 (1937). Furthermore, a municipality may still be liable for the unlawful or unconstitutional actions of its employee police officers under both federal and state law, even if those officers are, as individuals, qualifiedly immune under federal law, since the defense of qualified immunity does not deny that the officers performed the alleged improper conduct, only that they are not liable or legally responsible in damages.

11. What does warrant summary judgment in favor of the officers and the city on the remaining claims in this litigation, however, is not the fact that the police officers are deemed entitled to qualified immunity as a matter of law on the Plaintiff's federal claim, but rather the fact that this Court concludes that, on the facts alleged by Plaintiff, these officer's actions were taken, as a matter of law, with probable cause to believe that a felony had been or was being committed and that, therefore, an arrest without a warrant was proper. As stated earlier, probable cause to arrest is defined "in terms of facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense", *Gerstein, supra*. In this case, "the facts and circumstances within their knowledge

---

2. It must be emphasized that the police officers' actions in ths incident could be second guessed. One could reasonably argue that the complaining witness's contention that she saw the check in question on the Plaintiff's desk, an item of furniture in plain view, could or should have been verified or "checked out," given the fact that the complaining witness was accusing one who is not only a leading member of the community but (adopting her facts as true) one who was vehemently denying that she had the check in question, claiming rather that she had placed it in the mail for return to the Welfare Department, and also one who had called the police to her home in order to aid her in removing the complaining witness from her premises, when the complaining witness refused to believe her story with reference to the welfare check. Yet this Court's second guessing or "Monday morn-

ing quarterbacking" is totally irrelevant in the disposition of this motion. What is relevant, as set forth above, is whether a reasonable officer, faced with the facts and circumstances as stated by the Plaintiff in her affidavit, armed with the knowledge of the definition of grand theft set forth in the Ohio Revised Code, could have believed that the arrest was lawful—that probable cause to arrest existed. That question, this Court must answer in the affirmative. If the Defendant police officers erred, the error arose in the exercise of their discretion—in making an on-the-spot judgment of the credibility of the two persons making opposing assertions before them—and was reasonable in view of all the facts and circumstances. It is exactly such situations to which the doctrine of qualified immunity is meant to be applied. See *Poe v. Haydon* at 423.

and of which they had reasonably trustworthy information [the statement by the complaining witness] were sufficient in themselves to warrant a man of reasonable caution in the belief that a felony offense had been or was being committed." *Carroll, supra.*

There is no genuine issue of material fact on the issue of probable cause, because as a matter of law, based upon Plaintiff's version of the facts, construed most strongly in her favor and giving her the benefit of every reasonable inference to be drawn therefrom, these police officers had probable cause to arrest her at that point in time.

■ 12. Since the police officers acted with probable cause to arrest as a matter of law and are, therefore, not liable to the Plaintiff on any state claims, their employer—the municipality—cannot be liable for any state claims for relief under *respondeat superior.* Likewise, there can be no municipal liability under the federal claim for relief, based upon any allegedly unlawful or unconstitutional policies, practices and/or customs, for the reason that any allegedly unlawful or unconstitutional policies, practices and/or customs (assuming same to exist) did not give rise to any unlawful conduct with respect to Plaintiff (given the existence of probable cause) and thus caused no compensable injuries or damages to the Plaintiff.

13. The Plaintiff has contested the Motion for Summary Judgment filed by the *police officers* without requesting any additional time to conduct discovery in order to properly defend against the motion filed by those Defendants. However, with regard to the Motion for Summary Judgment filed by the *City of Dayton* and the *Police Department of the City of Dayton,*[3] the Plaintiff has filed a Fed.R.Civ.P. 56(f) affidavit, claiming that she cannot respond to that portion of the Motion for Summary Judgment without further discovery. Were the police officers non-liability as a matter of law decided solely upon the basis

of qualified immunity, this Court would defer ruling on that branch of the Defendants' motion as it applies to the City of Dayton, in order to allow the Plaintiff to conduct further discovery on the issue of policies, practices and/or customs which might have been both unlawful and the moving force behind a constitutional violation visited upon the Plaintiff by the police officers.

However, having decided the officers' non-liability upon the grounds of qualified immunity *and* the determination that, as a matter of law, they acted with probable cause, further discovery on the City's policies, practices and customs would avail the Plaintiff naught. Because the officers acted lawfully, making the arrest with probable cause, the City cannot be liable under *respondeat superior* on the state claims (there can be no derivative or imputed liability if there is no liability in the first instance). Neither can the City be liable under the federal claim since, regardless of whether the City has or practices unlawful or unconstitutional policies, practices and/or customs, they could not have been the direct and proximate cause or the moving force behind any compensable injuries or damage to Plaintiff since the actions of the officers were taken lawfully, i.e. with probable cause.

WHEREFORE, based upon the aforesaid, the Motion for Summary Judgment of the Defendants, City of Dayton, Officer Carlene Navarre, Officer Carol Pauley and Sergeant Barbara Bent (Doc. # 6) is deemed by this Court to be well taken and same is, therefore, sustained in its entirety. Judgment will be ordered entered in favor of said Defendants and against the Plaintiff herein. Ruling further, this Court, *sua sponte,* dismisses the Defendant, the Police Department of the City of Dayton, for the reason that same is not a suable entity.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the South-

---

3. As a matter of law, the Police Department of the City of Dayton, being a department of a municipality, is not a suable entity. According-

ly, this Court will, *sua sponte,* dismiss said Defendant as a party Defendant to this lawsuit.

ern District of Ohio, Western Division, at Dayton.