NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0417n.06
Filed: May 18, 2005

No. 03-6640

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| CHRISTOPHER CUNNINGHAM, | ) | |
| | ) | |
| Plaintiff - Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| OFFICER KEN SISK, OFFICER BRYAN | ) | EASTERN DISTRICT OF TENNESSEE |
| McDOWELL, OFFICER CHARLES | ) | |
| BRYANT, Individually and as Officers of | ) | |
| the Hamilton County Sheriff's Department; | ) | OPINION |
| JOHN CUPP, Sheriff of Hamilton County in | ) | |
| charge of the Hamilton County Sheriff's | ) | |
| Department, | ) | |
| | ) | |
| Defendants - Appellees. | ) | |

**Before: BOGGS, Chief Circuit Judge, NELSON, Circuit Judge, and SHADUR, District Judge**[*]

   **Milton I. Shadur, District Judge.** Christopher Cunningham ("Cunningham") appeals the

district court's order granting summary judgment in favor of Ken Sisk ("Sisk"), Bryan McDowell

("McDowell") and Charles Bryant ("Bryant"), officers with the Hamilton County Sheriff's

_____

   [*] The Honorable Milton I. Shadur, United States District Judge for the Northern District of
Illinois, sitting by designation.

Department, as to Cunningham's claims of civil rights violations under 42 U.S.C. §§1981 and 1983[1]

and Tennessee state law.[2] As permitted by Fed. R. App. P. 34(a), the parties have expressly waived

oral argument, and we unanimously agree that oral argument is not needed. Because we agree with

the district court that no genuine issues of material fact are present and that Sisk, McDowell and

Bryant are entitled to a judgment as a matter of law (*see* Fed. R. Civ. P. ("Rule") 56), we AFFIRM.

## Background[3]

Cunningham, an African-American, was pulled over by Sisk, who is white, while driving

on Interstate Highway 75 at approximately 3:30 a.m. on June 21, 2000. Upon seeing the flashing

blue lights of Sisk's police cruiser, Cunningham drove his 1998 Ford Taurus, which had dark

tinted windows, into the parking lot of an unlit rest area. After following Cunningham into the

rest area, Sisk called the police dispatcher for back-up, then got out of his cruiser, drew his

handgun from its holster and approached Cunningham's car. Observing that Cunningham's

driver's side window was open, Sisk pointed his handgun inside and ordered Cunningham to

place his hands outside the vehicle so that Sisk could determine whether he was armed. Some

ten minutes elapsed, after which McDowell (who is white) and Bryant (who is African-

---

[1] All further references to Title 42 take the form "Section--".

[2] Cunningham does not challenge the district court's grant of summary judgment as to his claims against Hamilton County and against John Cupp in his official capacity as Sheriff of Hamilton County.

[3] As did the district court, we credit Cunningham's version of the facts--the treatment called for by Rule 56 principles. Although defense counsel muddied the waters somewhat by injecting defendants' conflicting account of events into their appellate brief's factual narrative, we have ignored those deviations from Rule 56 doctrine.

American) arrived at the scene in their police vehicles. They too approached Cunningham's car

with weapons drawn. Sisk instructed Cunningham to get out of his car. When Cunningham

moved his hand inside the car to unbuckle his seat belt, Sisk shouted "Stop! I'll shoot your ass."

Cunningham told Sisk he had to unfasten his seat belt to get out of his car, and he did so.

Sisk, McDowell and Bryant then searched Cunningham's person and found nothing

problematic. When they asked Cunningham whether there were drugs in his car, he replied

"No." Next the officers searched the interior of the car, again finding no illegal drugs, weapons

or other contraband. After the completion of that search, and with the officers' handguns still

drawn, Sisk made a radio call to check the status of Cunningham's driver's license and vehicle

registration. When that check also yielded no negative information, the officers holstered their

weapons. Sisk issued Cunningham a citation for speeding at 99 miles per hour ("mph") in a 70

mph zone.[4] In all, the parties' encounter lasted about 45 minutes. When Cunningham asked

Sisk why he had been held so long at gunpoint, Sisk replied that he valued his life and that his

actions were motivated by self-protection.

On February 20, 2001 the General Sessions Court of Hamilton County conducted a

preliminary hearing to determine whether there was probable cause to proceed with a criminal

prosecution against Cunningham. At its conclusion the judge determined that there was such

probable cause and referred the matter to the Hamilton County Grand Jury, which returned a

---

[4] Cunningham disputes that charge, asserting that he had been traveling at the same rate of speed as other drivers on the road. We credit that assertion but note (as stated in the next paragraph of the text) that Cunningham ultimately pleaded guilty to driving in excess of the 70 mph speed limit.

speeding indictment on May 9. On July 24 Cunningham pleaded guilty in the Criminal Court of

Hamilton County to the misdemeanor offense of speeding and was sentenced to one day in the

county workhouse, payment of a $10 fine plus court costs, and one month's probation.

## Standard of Review

We review a district court's order granting summary judgment de novo (*Brenneman v.

MedCentral Health Sys.*, 366 F.3d 412, 417 (6th Cir. 2004)). Under Rule 56(c) summary

judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to a judgment as a matter of law." Although we view

the evidence in the light most favorable to nonmovant Cunningham and draw all reasonable

inferences in his favor (*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

(1986)), "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will

be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff"

(*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

## Reasonableness of the Search and Seizure

Cunningham's first claim under Section 1983 is predicated on the officers' alleged

violation of his Fourth Amendment right to be free from unreasonable search and seizure.

Cunningham puts forth three theories supporting that claim, none of which carries the day.

First he asserts that he was falsely arrested in violation of the Fourth Amendment. It is

true that "[t]he temporary stop and detention of a vehicle and its passengers, even for a brief

period of time, can constitute an unlawful 'seizure' under the Fourth Amendment" (*United States v. Copeland*, 321 F.3d 582, 592 (6ᵗʰ Cir. 2003)). But such a seizure is not unlawful and does not violate the Fourth Amendment "where the police have probable cause to believe a traffic violation has occurred" (*Whren v. United States*, 517 U.S. 806, 810 (1996)). Here Cunningham's guilty plea and conviction as to the speeding charge forecloses any claim that the police acted without probable cause (*Walker v. Schaeffer*, 854 F.2d 138, 142 (6ᵗʰ Cir. 1988)).

Cunningham also asserts that the officers' search of his vehicle violated the Fourth Amendment. But that claim also fails, because Cunningham cannot show that his arrest was unlawful. *United States v. Strahan*, 984 F.2d 155, 159 (6ᵗʰ Cir. 1993) is exemplary of the universal caselaw teaching that "[w]hen the occupant of a vehicle is arrested, the police may lawfully search the passenger compartment." Hence the district court correctly concluded that the search of Cunningham's vehicle was constitutionally permitted.

Finally, Cunningham stresses the fact that the officers had their weapons drawn during the encounter. Although he does not explicitly present it as such, the argument appears to be that the officers used excessive force in violation of the Fourth Amendment, a claim that is not trumped by the fact of a legal arrest (*Pray v. City of Sandusky*, 49 F.3d 1154, 1158 (6ᵗʰ Cir. 1995)). But we agree with the district court that here, where Cunningham stopped his vehicle in a secluded and unlit rest area at 3:30 a.m., the officers acted reasonably in unholstering their handguns while they investigated whether Cunningham was armed and whether there were any other passengers inside the vehicle.

Accordingly the district court correctly granted summary judgment in the officers' favor

as to all aspects of Cunningham's Fourth-Amendment-based Section 1983 claim. That is true regardless of the subjective motivation of the officers, as to which Cunningham contends there is a genuine issue of material fact. While as discussed below the officers' motivation is relevant to Cunningham's equal protection and intentional discrimination claims, their subjective intentions are irrelevant to the Fourth Amendment analysis (*Whren*, 517 U.S. at 813).

### Selective Enforcement Claim

Cunningham's other Section 1983 claim alleges that he was targeted by the officers solely because of his race, in violation of the Fourteenth Amendment's Equal Protection Clause. As the district court observed, because the Equal Protection Clause provides protection from constitutionally unequal treatment independent of the Fourth Amendment's protection against unreasonable searches and seizures, the existence of probable cause to search and arrest Cunningham does not perforce dispose of his Fourteenth Amendment claim (*United States v. Avery*, 137 F.3d 343, 352 (6th Cir. 1997)). Instead a Fourteenth Amendment claim of selective enforcement could lead to Section 1983 liability if Cunningham were to demonstrate "purposeful discrimination" in the officers' otherwise valid enforcement of the traffic laws against him (*Gardenhire v. Schubert*, 205 F.3d 303, 319 (6th Cir. 2000)).

To prevail on a claim of selective enforcement in violation of the Equal Protection Clause, a plaintiff must satisfy the three-part test set out in *United States v. Anderson*, 923 F.2d 450, 453 (6th Cir. 1991) (citations omitted, emphasis in original):[5]

_____

[5] Although *Anderson* spoke in the context of selective prosecution rather than selective enforcement, *Gardenhire* quoted and applied the language just quoted in the text to a selective enforcement claim. From a conceptual point of view, the analysis is the same in both situations.

> First, [an official] must single out a person belonging to an identifiable group, such as those of a particular race or religion, or a group exercising constitutional rights, for prosecution even though he has decided not to prosecute persons not belonging to that group in similar situations. Second, he must initiate the prosecution with a discriminatory purpose. Finally, the prosecution must have a discriminatory effect on the *group* which the defendant belongs to.

While Cunningham urges the existence of a genuine issue of material fact as to the officers' subjective motivation for arresting him and searching his car and his person, any such issue would be relevant only to the second element. But *Gardenhire*, 205 F.3d at 319 has reconfirmed this court's teaching that as to the first element "it is an absolute requirement that the plaintiff make at least a *prima facie* showing that similarly situated persons outside [his] category were not prosecuted."

Here Cunningham has proffered nothing to suggest that similarly situated people (speeders) of different races were treated differently in terms of arrest or search or the issuance of traffic citations. Instead he appears to base his selective enforcement claim solely on the fact that he is African-American and that Sisk and McDowell are white. Quite apart from his failure to explain away the fact that Bryant was also African-American, which would obviously tend to undercut any such claim, that effort to play the race card simpliciter lacks probative force as an asserted material (that is, outcome-determinative) fact, particularly in the face of the "strong presumption" in selective enforcement cases "that the state actors have properly discharged their official duties" (*Gardenhire, id.*). We share the district court's view that Cunningham's selective enforcement claim also fails as a matter of law.

### Section 1981 Intentional Discrimination Claim

Cunningham also claims that the officers' actions violated Section 1981(a), which provides that all persons within the United States "shall have the same right in every State. . .to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." Section 1981(c) protects those rights "against impairment by nongovernmental discrimination and impairment under color of state law." To establish a Section 1981 claim, a plaintiff must show (1) that he is a member of a racial minority, (2) that the defendant acted with an intent to discriminate against him on the basis of his race and (3) that the defendant's race discrimination concerned one or more of the protected activities enumerated in Section 1981(a) (*Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996)).

Though Section 1981 "on its face relates primarily to racial discrimination in the making and enforcement of contracts" (*Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459 (1975)), some other Courts of Appeals have held that racially motivated arrests and searches made in the absence of probable cause come within *Morris*' third requirement because they fall within the "equal benefits" and "like punishments" clauses of Section 1981(a) (*see, e.g.*, *Alexis v. McDonald's Restaurants of Mass., Inc.*, 67 F.3d 341, 348 (1st Cir. 1995); *Mahone v. Waddle*, 564 F.2d 1018, 1028 (3d Cir. 1977)). We need not weigh in on that issue, however, because no reasonable jury could find on the evidence produced by Cunningham that the traffic stop, arrest and search were motivated by an intent to discriminate against him on account of his race. That being so, he cannot establish *Morris*' second element.

There is plainly insufficient evidence to support any finding that Sisk, McDowell and Bryant were motivated by an intent to discriminate against Cunningham because he was African-American. Indeed, the direct evidence negates any such motivation as to the initial decision to pull his car over, for the windows of Cunningham's car were tinted and it was 3:30 a.m., so that Sisk could not then have seen Cunningham to ascertain his race.

As to the later arrest and search, Cunningham offers only Sisk's in-court statement that he drew his weapon after pulling Cunningham's car over because he customarily pulled his gun out on "any of them I catch." Cunningham implies that by "them" Sisk meant African-Americans, while Sisk testified that by "them" he meant "speeders." However that statement might be read, it alone is far too flimsy a reed on which to rest a conclusion that the officers' actions were racially motivated and violated Section 1981, for that section demands that plaintiffs meet "a high threshold of proof" (*Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003)(en banc)). Because Cunningham's remaining conclusory allegations of racial profiling also do not reach that high threshold, the district court correctly granted summary judgment in the officers' favor as to Cunningham's Section 1981 claim as well.

### State Law Claims

Finally, Cunningham also asserts two claims for relief under Tennessee state law theories. First he claims that the officers' actions constitute the tort of false imprisonment or false arrest. But a necessary element of that tort is that the complained-of arrest be unlawful (*Coffee v. Peterbilt of Nashville*, 795 S.W.2d 656, 659 (Tenn. 1990)). As already discussed, Cunningham falls at that hurdle, so that the claim fails for the same reasons as his Fourth

Amendment false arrest claim. Lastly, Cunningham asserts that the officers' actions constituted negligence per se in violation of Tenn. Code Ann. §39-16-403, which prohibits public officials from "(1) Intentionally subject[ing] another to mistreatment or to arrest, detention, stop, frisk, halt, search [or] seizure. . .when the public servant knows the conduct is unlawful; or (2) Intentionally den[ying] or imped[ing] another in the exercise or enjoyment of any right, privilege, power or immunity, when the public servant knows the conduct is unlawful." We agree with the district court that Cunningham failed to present evidence sufficient for any reasonable jury to conclude that the officers violated the statute.

### Conclusion

All of Cunningham's arguments, whether taken singly or collectively, fall well short of identifying any genuine issue of material fact that would call for the rejection of the officers' Rule 56 summary judgment motion. We therefore AFFIRM the district court's grant of that motion.