PINNEY DOCK & TRANSPORT CO.

v.

PENN CENTRAL CORPORATION, et al.

LITTON INDUSTRIES, INC., et al.

v.

CHESAPEAKE & OHIO RAILWAY
COMPANY, et al.

No. C80–1733.

United States District Court,
N.D. Ohio.

Jan. 16, 1998.

## MEMORANDUM OPINION AND ORDER

ECONOMUS, District Judge.

### BACKGROUND

The Plaintiffs in these two cases ("Pinney" and "Litton") asserted civil antitrust claims against multiple railroads, including Bessemer and Lake Erie Railroad ("B & LE") and Penn Central Corporation ("Penn Central"), the successor in interest to Penn Central Transportation Company in bankruptcy reorganization, now known as American Premier Underwriters, Inc. In each of these cases, B & LE asserted cross-claims against Penn Central for (a) indemnity under federal law, (b) indemnity under Ohio state law, (c) contribution under federal law, and (d) contribution under Ohio state law.

The Honorable William K. Thomas conducted all proceedings in these two cases from their respective filing in 1980 and 1981 until his retirement from judicial service in the latter part of 1997. In 1982, Judge Thomas granted Penn Central's motion under Fed.R.Civ.P. 12(b)(6) to dismiss B &

LE's cross-claims for indemnity under federal law, indemnity under Ohio state law, and contribution under federal law. In 1996, Penn Central moved for summary judgment on B & LE's sole remaining cross-claim, for contribution under Ohio state law, and the parties fully briefed their respective positions on that motion. Following Judge Thomas' retirement, the clerk reassigned this case with that motion still pending.

After carefully reviewing the briefs and conducting oral argument in open court, this Court rules that there is no genuine issue of material fact and third-party defendant Penn Central is entitled to judgment as a matter of law on third-party plaintiff B & LE's remaining cross-claim for contribution under Ohio state law. No party has requested reconsideration of Judge Thomas' rulings dismissing B & LE's three other cross-claims against Penn Central, and the Court has no reason to disagree with those rulings. Accordingly, the Court now enters a final judgment with prejudice dismissing all branches of B & LE's cross-claims against Penn Central for indemnity and contribution in these cases.

The facts from which the claims at issue arise are spelled out in length in a number of decisions and will be only briefly summarized here. *See, Pinney Dock & Trans. Co. v. Penn Central Corp.,* 838 F.2d 1445 (6th Cir.), *cert. denied,* 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988); *In Re Lower Lake Erie Iron Ore Antitrust Lit.,* 998 F.2d 1144 (3d Cir.1993), *cert. denied,* 510 U.S. 1091, 114 S.Ct. 921, 127 L.Ed.2d 215 (1994); *United States v. Bessemer and Lake Erie Railroad Co.,* 717 F.2d 593 (D.C.Cir.1983). Until the 1950's, iron ore was transported from mines in Minnesota, Michigan and Canada to steel mills in Ohio, Pennsylvania and West Virginia by ship across the Great Lakes, unloaded at docks on the south shore of Lake Erie and delivered in railroad cars to steel mills inland. The ore was transported in mud-like form in conventional lake vessels called "bulkers" which had to be unloaded using special cranes called "huletts" available only at docks owned by the railroads. Iron ore producers thereafter began to process their ore into pellet form which could be transported in self-unloading ships and unloaded with-

out special equipment at private non-railroad docks where trucks could compete to carry the iron ore to the steel mills. The railroads which had monopolized this trade conspired (the "Iron Ore Conspiracy") to prevent the development of an alternative transportation system for iron ore pellets which would consist of transporting the pellets across the Great Lakes in self-unloading vessels, discharging them at private docks on lower Lake Erie without the need of special cranes and transporting the pellets from those docks to the steel mills by truck. The victims of the conspiracy's success in delaying development of this alternative self-unloading transportation system were private docks on lower Lake Erie such as Pinney, manufacturers and operators of self-unloading vessels such as Litton, trucking companies who could compete to transport the pellets inland and steel companies who would benefit from a competitive alternative transportation system.

In 1981, a federal grand jury in the District of Columbia returned an indictment charging B & LE and other railroads with a criminal violation of the Sherman Act for their participation in the Iron Ore Conspiracy, and B & LE subsequently pleaded *nolo contendere* and was convicted and fined. Twelve civil cases were filed against B & LE and other railroads by parties claiming to have been injured by the conspiracy. The *Pinney* and *Litton* cases in this Court were the first to be filed. The ten later cases were consolidated and tried in the United States District Court for the Eastern District of Pennsylvania ("MDL 587"). All of the defendants except B & LE settled those cases prior to or during trial. A jury found B & LE liable to the MDL 587 plaintiffs for violating both the Sherman Act and the similar Ohio Valentine Act and a second jury assessed damages against it for approximately $600 million. The two cases before this Court were not consolidated and tried in MDL 587. B & LE settled those cases with Pinney and Litton for approximately $30 million after the MDL 587 jury verdicts and now seeks contribution from Penn Central toward the amount of these settlement payments[1] pursuant to Ohio Revised Code § 2307.32(A).[2]

## ANALYSIS

◾ Penn Central asserts a number of separate grounds in support of its summary judgment motion. Since this Court agrees with Penn Central's contention that B & LE cannot recover contribution under Ohio state law because it was an intentional tortfeasor, the Court need not and does not rule on the other grounds advanced by Penn Central.

Section 2307.32(A) provides: "There is no right of contribution in favor of any tortfeasor who intentionally has caused or intentionally has contributed to the injury or loss...." The parties disagree as to the meaning of this language. B & LE asserts that it is not disqualified from contribution even if it intentionally participated in the Iron Ore Conspiracy, knowing that its purpose was to restrain the trade of the conspiracy's intended victims, so long as it did not intentionally cause the particular injury that the conspiracy visited on Pinney and Litton. B & LE reasons that if the acts of its co-

1. B & LE also claimed indemnity and contribution under Ohio state law in the Cuyahoga County Court of Common Pleas for the payments it made to the MDL 587 plaintiffs, except Wills Trucking, Inc. and its affiliated dock companies, *USX v. Penn Central Corp.*, No. 94–271191. The *Wills* case was originally filed in this Court naming B & LE, but not Penn Central, as a defendant. B & LE brought a third-party action against Penn Central in Wills alleging contribution under Ohio law and indemnification under both Ohio and federal law. Judge Thomas' 1982 decision dismissed B & LE's third-party claims in *Wills* for indemnity under federal and Ohio state law on the same grounds as he dismissed B & LE's similar cross-claims in *Pinney* and *Litton*. In response to Penn Central's 1996 summary judgment motion to dismiss the remaining claim for contribution under Ohio state law in all three cases, B & LE moved to voluntarily dismiss its Ohio contribution claim in *Wills* with prejudice pursuant to FED.R.CIV.P. 41(a)(2), and Judge Thomas granted the motion and entered final judgment on all of B & LE's third-party claims. That judgment is now on appeal to the United States Court of Appeals for the Sixth Circuit.

2. At the time that B & LE alleged its contribution cross-claims, the same provision was contained in Ohio Rev.Code § 2307.31(A). Although the statutory provision has been renumbered, the pertinent language remains the same.

conspirators, even though in furtherance of the conspiracy, injured Pinney and Litton, but B & LE's own acts did not, it is not disqualified from contribution because it did not intentionally cause or contribute to their injury. Penn Central, on the other hand, argues that the provision at issue adopts the commonly accepted concept of contribution that an intentional tortfeasor, *i.e.*, one who acts intentionally to cause injury, cannot obtain contribution. Penn Central reasons that this provision draws a distinction between a negligent and an intentional tort in that a negligent tortfeasor may obtain contribution, but an intentional tortfeasor may not, and a conspirator is an intentional tortfeasor.

■ The Court agrees with Penn Central's interpretation of § 2307.32(A). This statute was modeled after the Uniform Contribution Among Tortfeasors Act ("UCATA"), *Beck v. Cianchetti*, 1 Ohio St.3d 231, 439 N.E.2d 417, 419 n. 3 (1982), and the pertinent language is substantially identical to UCATA which, in turn, adopts the classic distinction between negligence and intentional tort and does not allow an intentional tortfeasor to shift liability. A party is an intentional tortfeasor if it acted with the intention to cause any injury, as distinguished from acting without intent to cause any injury but negligently doing so.

B & LE argues that even if it intentionally entered the Iron Ore Conspiracy knowing that its purpose was to illegally restrain trade, it can still obtain contribution toward its payments to Pinney and Litton if it did not subjectively intend that those particular victims would be injured and none of its acts directly caused their particular injury. That argument is not persuasive.

■ Acts by different antitrust co-conspirators in furtherance of the conspiracy merely carry out the conspirators' agreement to restrain trade, and once a party takes the affirmative step of entering into an illegal conspiracy, that party is responsible for all the acts and consequent injury caused in furtherance of the conspiracy. *See, e.g., Pinkerton v. United States*, 328 U.S. 640, 647, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). In other words, one who knowingly enters an illegal conspiracy intends to cause the injury that the conspiracy was designed to impose,

and hence, is an intentional tortfeasor, not a negligent one.

Even if the Court were to accept B & LE's interpretation of the pertinent provisions of § 2307.32(A) as requiring that B & LE intentionally caused or contributed to Pinney and Litton's particular injuries to be denied contribution, Penn Central would still be entitled to summary judgment. That would raise two issues: did B & LE actually injure Pinney and Litton, and did it intend to do so.

■ There is no genuine issue of material fact that B & LE actually injured Pinney and Litton. As a necessary element of its claim for contribution, B & LE and Penn Central must be "jointly and severally liable in tort for the same injury." Ohio Revised Code § 2307.32(A). B & LE must allege, and therefore admit, such injury as part of its contribution claim against Penn Central. The only common injury which B & LE and Penn Central allegedly caused to Pinney and Litton was from the Iron Ore Conspiracy, as B & LE could not be jointly and severally liable to Pinney and Litton unless it injured them by participating in the conspiracy. In order to obtain contribution, B & LE must be directly liable in tort to Pinney and Litton. Such tort liability necessarily entails that BL & LE injured them, since injury is a necessary element for a cause of action in tort. *See, e.g., Strother v. Hutchinson*, 67 Ohio St.2d 282, 423 N.E.2d 467, 469–70 (1981); *Dynes Corp. v. Seikel, Koly & Co.*, 100 Ohio App.3d 620, 654 N.E.2d 991, 1009 (1994).

■ Nor is there a genuine issue of material fact that B & LE intended the injury. B & LE entered a *nolo contendere* plea to a criminal indictment for violating the Sherman Act by engaging in the Iron Ore Conspiracy and the Court of Appeals for the District of Columbia affirmed the resulting felony conviction. *United States v. Bessemer and Lake Erie Railroad Co.*, 717 F.2d 593 (D.C.Cir.1983). By that plea, B & LE admitted the allegations in the indictment, at least to the extent that it could not thereafter assert contrary civil claims. *Walker v. Schaeffer*, 854 F.2d 138 (6th Cir.1988).

▆ Under *Walker*, B & LE's felony conviction is admissible in this action, and establishes that B & LE criminally violated the antitrust laws by engaging in the Iron Ore Conspiracy. A convicted felon cannot be an unintentional tortfeasor entitled to contribution. Negligence cannot be the basis for a felony conviction under the Sherman Act since a necessary element of the offense is that the defendant intended to restrain trade. *United States v. United States Gypsum Co.*, 438 U.S. 422, 443–444, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978). Since *Walker* prevents B & LE from asserting in this action, contrary to the indictment, that it did not conspire to and intend to cause injury by restraining trade, it cannot obtain contribution.

▆ Furthermore, B & LE, having been found liable of violating the Sherman Act in MDL 587, it is collaterally estopped from denying that it intentionally participated in an illegal conspiracy knowing that the purpose of the conspiracy was to restrain trade. Since it was this very conspiracy that caused Pinney and Litton's damages, B & LE cannot obtain contribution. Restraining trade is a type or kind of injury. The finding that B & LE intentionally participated in the conspiracy knowing its purpose was to restrain trade is a finding that it intended to cause injury. In other words, the MDL 587 jury necessarily found that B & LE intended to cause a specific kind of injury—restraint of trade.

B & LE's principal argument against the collateral estoppel effect of MDL 587 is that Pinney and Litton were not parties to that trial and therefore the jury did not find that they were injured at all, much less that B & LE intentionally injured them. But that argument ignores, as is obviously the case, that B & LE was found in MDL 587 to have intentionally injured the other victims of the Iron Ore Conspiracy who were plaintiffs in that action.

As the Third Circuit pointed out: "The Pinney Dock case involves the same defendants and the same conspiracy at issue [in MDL 587]." *Lower Lake Erie*, 998 F.2d at 1160. Since the Court interprets Ohio Rev. Code § 2307.32(A) as precluding contribution for an intentional tortfeasor who intends to cause any injury, that disqualifies B & LE from contribution as a matter of law.

## CONCLUSION

There is no genuine issue of material fact that B & LE is an intentional tortfeasor and is thereby precluded from obtaining contribution against Penn Central as a matter of law. The only basis for B & LE's liability to Pinney and Litton is its intentional participation in the illegal Iron Ore Conspiracy, making it jointly and severally liable to Pinney and Litton along with its fellow co-conspirators for all injury caused by the conspiracy. There is no suggestion that B & LE is liable to Pinney and Litton for unintentional negligence.

Inasmuch as this Court has previously disposed of all other claims in this case, the Court now enters its final judgment, which includes a dismissal with prejudice of all B & LE's indemnity and contribution claims against Penn Central.

**IT IS SO ORDERED.**

### JUDGMENT

This matter is before the Court upon motion for summary judgment by third-party defendant, Penn Central Corporation n/k/a American Premier Underwriters, Inc. ("Penn Central") on third-party plaintiff, Bessemer and Lake Erie Railroad Company's ("B & LE") cross-claim against Penn Central for contribution under Ohio law. On December 18, 1997, the Court held a hearing on the motions.

After review of the briefs and arguments by counsel, the Court finds as a matter of law that B & LE was an intentional tortfeasor within the meaning of OHIO REV.CODE § 2307.32(A) and, therefore, not entitled to contribution from Penn Central. Therefore, Penn Central's motion for summary judgment is granted and B & LE's cross-claim for contribution under Ohio law is dismissed.

Accordingly, **JUDGMENT** is granted in favor of Penn Central. As no other claims

remain, this case is dismissed with prejudice. Costs assessed to B & LE.

**IT IS SO ORDERED.**