**USX CORPORATION et al., Appellants,**

v.

**PENN CENTRAL CORPORATION et al., Appellees.***

[Cite as *USX Corp. v. Penn Cent. Corp.* (2000), 137 Ohio App.3d 19.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 74755.

Decided March 1, 2000.

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was allowed in (2000), 89 Ohio St.3d 1469, 732 N.E.2d 1000. A motion to dismiss was granted and the cause was dismissed in (2000), 90 Ohio St.3d 1426, 736 N.E.2d 24.

*Squire, Sanders & Dempsey* and *Thomas S. Kilbane,* for appellants USX Corporation et al.

*Squire, Sanders & Dempsey, Timothy W. Bergin, Stacy D. Ballin* and *David A. Lynch,* for appellant Bessemer & Lake Erie Railroad Co.

*Kaye, Scholer, Fierman, Hays & Handler* and *Peter M. Fishbein,* for appellee Penn Central Corporation.

*Michael L. Cioffi; Orrick, Herrington & Sutcliffe* and *James M. Capra; Dinsmore & Stohl, L.L.P.,* and *Anthony J. Celebrezze, Jr.; Kaye, Scholer, Fierman, Hays & Handler* and *Karen E. Katzman,* for appellee American Premier Underwriters.

KENNETH A. ROCCO, Judge.

This case is before the court on appeal from the decision of the Cuyahoga County Court of Common Pleas granting summary judgment in favor of defendant-appellee Penn Central Corporation, now known as American Premier Underwriters, Inc. ("Penn Central"), on plaintiffs-appellants' claims for indemnity and contribution to a $600 million judgment entered against them in multidistrict antitrust litigation in the United States District Court for the Eastern District of Pennsylvania. Plaintiffs-appellants, USX Corporation ("USX") and Bessemer and Lake Erie Railroad Co. ("B & LE"), raise the following assignments of error for our review:

"I. The court below erred to plaintiffs' prejudice by failing to find that Penn Central waived its affirmative defenses by consciously declining to present them in response to plaintiffs' November 21, 1996 motion for partial summary judgment on the issue of liability.

"II. The court below erred to plaintiffs' prejudice by considering and granting Penn Central's April 1, 1998 motion for summary judgment dismissing plaintiffs' claims for contribution under Ohio Rev. Code § 2307.32–.33 for the payment of antitrust judgments against Bessemer for which Penn Central was jointly and severally liable and is primarily responsible, but has paid nothing.

"III. The court below erred to plaintiffs' prejudice by considering and granting Penn Central's motion for summary judgment dismissing plaintiffs' claims for common law indemnity for antitrust judgments against Bessemer for which Penn Central is primarily responsible, and for which Bessemer is responsible only vicariously, passively, and secondarily."

We find none of these contentions have merit, and affirm the trial court's judgment.

## PROCEEDINGS BELOW

The complaint in this case was filed on May 26, 1994. It alleges that USX, B & LE, Penn Central, and other railroads were named defendants in several antitrust actions in United States district courts throughout the United States. Ten of these cases were eventually consolidated in multidistrict litigation known as "MDL 587" in the Eastern District of Pennsylvania.

The MDL plaintiffs' claims against Penn Central were dismissed on the ground that those claims were discharged in Penn Central's bankruptcy reorganization proceedings. USX and B & LE assert they asked the federal court for leave to add crossclaims or third-party claims against Penn Central for indemnity and contribution, but the federal court never ruled on this request.

All remaining defendants except USX and B & LE settled with the MDL plaintiffs before or during the trial conducted in 1989. The jury found B & LE liable for federal and state antitrust violations in the amount of approximately $600 million after trebling damages under federal law and doubling them under Ohio law. This award was upheld on appeal and was paid by USX and B & LE.

In the present action, USX and B & LE contended that Penn Central was liable to indemnify them at common law because its responsibility for the MDL plaintiffs' injury was primary and active while the liability of USX and B & LE was secondary and passive. USX and B & LE alternatively claimed that Penn Central was jointly and severally liable for the MDL plaintiffs' injuries and therefore was liable to USX and B & LE for contribution.

On September 15, 1994, this action was stayed on the parties' stipulation, pending a decision by United States Bankruptcy Judge John P. Fullam on Penn Central's motion for an order requiring USX and B & LE to dismiss the complaint in this case. A letter to the court from Penn Central's counsel dated November 1, 1994, indicated that Judge Fullam had restrained USX and B & LE from prosecuting their claims in this action. Nevertheless, this action remained pending and inactive for nearly two years, when the trial court set the matter for a case management conference. Thereafter, the trial court entered an order *nunc pro tunc* reinstating this case to the active docket because the related federal litigation was "resolved."

On November 21, 1996, USX and B & LE moved the court for partial summary judgment, asserting that Penn Central was bound by the judgment in MDL–587 and was barred from relitigating certain facts.[1] Penn Central filed its brief in opposition on February 7, 1997. Reply and surreply briefs were filed with leave of court in March and April 1997.

On January 28, 1998, more than nine months after the last brief was filed on plaintiffs' motion for partial summary judgment, the court ordered the "[p]arties to submit briefs/motions on the issues of contribution of [*sic*] indemnification * * * ." In response, USX and B & LE filed a memorandum; Penn Central filed a motion for summary judgment. USX and B & LE responded to this motion, and Penn Central replied.

On May 29, 1998, the trial court entered the following final order:

---

1. Specifically, appellants asked the court to find that the following facts were established in the MDL litigation: (1) that B & LE and Penn Central participated in a conspiracy to restrain competition in the transportation of iron ore, in violation of federal and Ohio antitrust laws; (2) the MDL plaintiffs incurred antitrust injury as a result; and (3) the MDL plaintiffs' damages totalled at least $497,352,951 (after doubling and trebling under federal and Ohio law, and after offsets for settlements with other defendants).

"After thoroughly reviewing the entire case file, all briefs submitted by the respective parties and the exhibits and authorities attached thereto, and after construing the evidence most strongly in favor of Plaintiff USX Corporation and Bessemer and Lake Erie Railroad Company ('Plaintiff'), this Court concludes that: (1) there exist no genuine issues of material fact which would otherwise preclude this Court from granting Summary Judgment in favor of Defendant, Penn Central Corp. n/k/a American Premier Underwriters, Inc. ('Defendant'), as to all counts and/or claims advanced by Plaintiff; (2) that Defendant is entitled to judgment as a matter of law with respect to all counts and/or claims advanced by Plaintiff; and (3) that reasonable minds can come to only one conclusion, and that conclusion is adverse to Plaintiff. Based on the foregoing, Defendant's April 1, 1998 Motion for Summary Judgment is well-taken and is granted in its entirety. IT IS SO ORDERED. FINAL."

USX & B & LE timely appealed from this ruling on June 23, 1998.

## LAW AND ANALYSIS

### I. *Alleged Waiver of Affirmative Defenses*

In their first assignment of error, USX and B & LE contend that the trial court erred by failing to find that Penn Central had waived the affirmative defenses upon which it secured summary judgment. USX and B & LE argue that Penn Central should have raised these defenses in opposition to the motion for partial summary judgment that they filed more than one year before Penn Central's summary judgment motion.

USX and B & LE do not identify the affirmative defenses that they claimed Penn Central waived; however, we assume that they refer to one or more of the defenses raised in Penn Central's answer.

The failure to raise an affirmative defense in opposition to a motion for partial summary judgment cannot be viewed as a voluntary relinquishment of the right to assert it. For example, a defendant might validly choose not to respond to a partial summary judgment motion at all. The defendant might concede that plaintiff had established the elements of his or her claim alleged in the motion yet continue to assert that it is entitled to judgment, either because some other element of the claim cannot be proved or because of an affirmative defense. Alternatively, the defendant could choose to respond directly to the arguments raised in a partial summary judgment motion rather than rely upon affirmative defenses.

Having preserved the affirmative defenses in its answer, Penn Central did not waive its affirmative defenses by failing to raise them *again* in opposition to a plaintiff's motion for partial summary judgment on separate issues. Because

USX and B & LE were not seeking a final judgment, Penn Central could assume it would have later opportunities to raise its affirmative defenses, if necessary. Therefore, the court cannot assume that Penn Central relinquished any right by failing to raise an affirmative defense in opposition to the motion of USX and B & LE for partial summary judgment.

Accordingly, the first assignment of error is overruled.

## II. *Contribution*

■  The second assignment of error asserts that the trial court erred by granting judgment for Penn Central on the contribution claim of USX and B & LE.  USX and B & LE claim that Penn Central was jointly and severally liable, and primarily responsible, for the MDL plaintiffs' claims.

■  There is no express or implied federal statutory or common-law right of contribution to a judgment under the Sherman Act. *Texas Indus. v. Radcliff Materials* (1981), 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500.  Nevertheless, USX and B & LE argue they are entitled to contribution under Ohio law.  R.C. 2307.32(A) provides:

"Except as otherwise provided in this section or section 2307.33 of the Revised Code, if two or more persons are jointly and severally liable in tort for the same injury or loss to person or property * * *, there is a right of contribution among them even though judgment has not been recovered against all or any of them. The right of contribution exists only in favor of a tortfeasor who has paid more than that tortfeasor's proportionate share of the common liability, and that tortfeasor's total recovery is limited to the amount paid by that tortfeasor in excess of that tortfeasor's proportionate share.  No tortfeasor is compelled to make contribution beyond that tortfeasor's own proportionate share of the common liability.  There is no right of contribution in favor of any tortfeasor who intentionally has caused or intentionally has contributed to the injury or loss to person or property * * * ."

It is not clear whether USX and B & LE contend that this statute permits them to obtain contribution from Penn Central on the MDL plaintiffs' judgment for Sherman Act violations.  We have found no authority to support such a contribution claim under Ohio law, and appellants have cited none.[2]  Such a claim

---

**2.**  The authorities cited by appellants suggest the availability of a claim under Ohio law for contribution to a *state* law antitrust judgment, *Pinney Dock & Transp. Co.* (N.D.Ohio 1982), 1982–1 Trade Cases (CCH) ¶ 64,687, unreported, 1982 WL 1828, although that court later found that the antitrust conspirator was an intentional tortfeasor precluded from obtaining contribution as a matter of law under R.C. 2307.32(A). *Pinney Dock & Transp. Co. v. Penn Cent. Corp.* (N.D.Ohio 1998), 991 F.Supp. 908, affirmed (C.A.6, 1999), 196 F.3d 617.  Another authority discusses claims for contractual *indemnity* with respect to a federal antitrust

would be fraught with concerns about federal-state relations that the parties have not addressed. See *California v. ARC Am. Corp.* (1989), 490 U.S. 93, 109 S.Ct. 1661, 104 L.Ed.2d 86; *Northwest Airlines, Inc. v. Transport Workers Union* (1981), 451 U.S. 77, 97, 101 S.Ct. 1571, 1583, 67 L.Ed.2d 750, 766 fn. 38; cf. *Medina Agricultural Soc. v. Swagler* (1987), 34 Ohio App.3d 336, 518 N.E.2d 589 (refusing to imply right of contribution under state law for discrimination claims under Title VII). Accordingly, we will assume that appellants argue only that they are entitled to contribution to the judgment for violations of Ohio's Valentine Antitrust Act, R.C. Chapter 1331.

▮ First, we must determine whether a violation of the Valentine Act is a tort[3] for which contribution may be available under R.C. 2307.32. The parties apparently assume it is, so we will not consider this question at length. Though statutory, claims for antitrust violations are generally considered analogous to tort claims. See *Pinney Dock & Transp. Co. v. Penn Cent. Corp.* (N.D.Ohio 1982), 1982-1 Trade Cases ¶ 64,687, unreported, 1982 WL 1828, and authorities cited therein. Civil conspiracy is considered an intentional tort. *Williams v. Aetna Fin. Co.* (1998), 83 Ohio St.3d 464, 475, 700 N.E.2d 859, 868.

Penn Central contends that B & LE and USX are not entitled to contribution because they intentionally caused or contributed to the MDL plaintiffs' loss. Penn Central argues that B & LE's liability was based on its voluntary and intentional participation in a conspiracy to prevent the establishment of an alternative system for transporting iron ore that would have competed with the railroads' monopoly system. The intended victims of this conspiracy were the plaintiffs in MDL–587, the private docks and trucking companies that would have provided the alternative transportation, and the steel mills that would have used

---

judgment, *Cimarron Pipeline Constr., Inc. v. Natl. Council on Comp. Ins.* (W.D.Okla.1992), unreported, 1992 WL 350612.

**3.** R.C. 2307.32(A) does not differentiate between intentional and unintentional *torts*, but between tortfeasors who intentionally (or unintentionally) cause or contribute to an injury or loss. The distinction is narrow, but it may be significant. Proof of a civil violation of antitrust laws does not necessarily require proof of an unlawful intent; it may also be proved by demonstrating that the defendant's conduct had an anticompetitive effect. *McLain v. Real Estate Bd.* (1980), 444 U.S. 232, 243, 100 S.Ct. 502, 509–510, 62 L.Ed.2d 441, 451; *United States v. Container Corp. of Am.* (1969), 393 U.S. 333, 89 S.Ct. 510, 21 L.Ed.2d 526; *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 1982-1 Trade Cases ¶ 64,687, unreported, 1982 WL 1828. Thus, it is at least theoretically possible for an antitrust conspirator to demonstrate that it is entitled to contribution because it did not *intentionally* cause or contribute to the plaintiff's loss, though its conduct had an anticompetitive effect.

Nonetheless, contribution is not a concept easily applied to a conspiracy. Each member of a conspiracy acts for the group, so it would appear impossible to apportion liability. The punitive nature of the duple damages provisions also limits the applicability of the concept of proportionate liability. We need not address these difficult questions here, however, because we find as a matter of law that B & LE acted intentionally.

the alternative system at reduced cost. Therefore, Penn Central claims, B & LE and USX intentionally caused or contributed to the injury or loss to the MDL plaintiffs and has no right of contribution.

In response, B & LE and USX argue that in order to demonstrate that they have no right of contribution, Penn Central must show that B & LE specifically intended to (1) violate the antitrust laws, (2) cause injury to each of the MDL plaintiffs, and (3) inflict the type of harm the MDL plaintiffs actually suffered. They apparently claim that they "unintentionally" violated the antitrust laws and did not intend to cause the particular injury to the particular plaintiffs in the MDL litigation.

Such specific intent is not required to bar contribution under the terms of R.C. 2307.32. We agree with the common-sense construction of R.C. 2307.32 propounded by the trial court in *Pinney Dock & Transp. Co. v. Penn Cent. Corp.* (1998), 991 F.Supp. 908, affirmed (C.A.6, 1999), 196 F.3d 617. The statute precludes contribution in favor of a party who intentionally causes or contributes to *an* injury; it does not require intent to violate the law or intent to cause a particular injury to a particular party.

The evidence presented to the trial court showed that B & LE pleaded no contest to a criminal indictment for violating the Sherman Act by engaging in the iron ore conspiracy that was the subject of MDL 587. Its resulting conviction was affirmed on appeal. *United States v. Bessemer & Lake Erie RR. Co.* (D.C.Cir.1983), 717 F.2d 593. A necessary element of the crime for which B & LE was convicted was that B & LE intended to restrain trade. *Pinney Dock,* 991 F.Supp. 908. The criminal conviction estops B & LE and USX from asserting a contradictory civil claim. *Walker v. Schaeffer* (C.A.6, 1988), 854 F.2d 138; *Pinney Dock,* 991 F.Supp. 908, 911–912.

USX and B & LE argue that Crim.R. 11(B)(2) and Evid.R. 410 prohibit the use of B & LE's no contest plea against them. Because the plea at issue here was not entered in an Ohio court, Crim.R. 11 has no applicability. Evid.R. 410 renders inadmissible "[a] plea of no contest or the equivalent plea from another jurisdiction * * * in any civil or criminal proceeding against the defendant who made the plea." Clearly, the rule prohibits the affirmative use of a no contest plea in a claim against a former criminal defendant to subject him or her to additional civil or criminal liability. However, this does not mean a former criminal defendant should be able to assert a claim that contradicts the judgment of conviction against him or her. Use of the conviction as a *defense* against a claim by a former criminal defendant is not prohibited. See *Walker v. Schaeffer* (C.A.6, 1988), 854 F.2d 138, 143.

We find that there was no genuine issue as to any material fact, and, as a matter of law, B & LE was an intentional tortfeasor that was precluded from obtaining contribution under R.C. 2307.32(A). Therefore, we reject the second assignment of error and affirm the judgment in favor of Penn Central on the contribution claim of USX and B & LE.

### III. *Indemnity*

In their final assignment of error, USX and B & LE argue that the court improperly granted summary judgment to Penn Central on their indemnity claim.

"[I]ndemnity may be defined as the right, arising out of an implied contract, of a person who has been compelled to pay what another should pay, to obtain complete reimbursement. The courts in Ohio have recognized the distinction between one who is actually at fault, and another who, by reason of his relationship with the wrongdoer or by operation of law, has incurred tort liability without personal fault for the acts committed by such wrongdoer." *Allstate Ins. Co. v. U.S. Assoc. Realty, Inc.* (1983), 11 Ohio App.3d 242, 246, 11 OBR 368, 372, 464 N.E.2d 169, 173.

Although USX and B & LE argue that they were secondarily or vicariously liable for Penn Central's wrongful conduct, they were found liable in the MDL–587 cases because they participated in an unlawful conspiracy. B & LE was held primarily liable for the actions of its co-conspirators in furtherance of the conspiracy. Indemnity is not permitted between co-conspirators who are joint tortfeasors. *Pinney Dock & Transp. Co. v. Penn Cent. Corp.* (C.A.6, 1999), 196 F.3d 617; *Bessemer & Lake Erie RR. Co. v. Am. Premier Underwriters, Inc.* (C.A.6, 1999), 181 F.3d 106; *Developers Diversified Realty Corp. v. Cicchini* (Sept. 30, 1996), Stark App. No.1996CA00007, unreported, 1996 WL 575983. Therefore, the trial court properly granted summary judgment in favor of Penn Central on the indemnity claim of USX and B & LE. The third assignment of error is overruled.

Both sides have expended large quantities of ink in arguing the collateral estoppel or *res judicata* effects of prior orders of various federal court. Because our independent conclusions here are in accord with the rulings of the federal courts, we need not reach these issues.

The trial court's judgment is affirmed.

*Judgment affirmed.*

PATTON, J., concurs.

TIMOTHY E. MCMONAGLE, P.J., concurs in judgment only.