OPINION
This case is before the court on appeal from the decision of the Cuyahoga County Court of Common Pleas granting summary judgment in favor of defendant-appellee Penn Central Corporation, now known as American Premier Underwriters, Inc. ("Penn Central"), on plaintiffs-appellants' claims for indemnity and contribution to a $600 million judgment entered against them in multidistrict antitrust, litigation in the United States District Court for the Eastern District of Pennsylvania. Plaintiffs-appellants, USX Corporation ("USX") and Bessemer and Lake Erie Railroad Co. ("BLE"), raise the following assignments of error for our review:
 I. THE COURT BELOW ERRED TO PLAINTIFFS' PREJUDICE BY FAILING TO FIND THAT PENN CENTRAL WAIVED ITS AFFIRMATIVE DEFENSES BY CONSCIOUSLY DECLINING TO PRESENT THEM IN RESPONSE TO PLAINTIFFS' NOVEMBER 21, 1996 MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF LIABILITY. *Page 22 
 II. THE COURT BELOW ERRED TO PLAINTIFFS' PREJUDICE BY CONSIDERING AND GRANTING PENN CENTRAL'S APRIL 1, 1998 MOTION FOR SUMMARY JUDGMENT DISMISSING PLAINTIFFS' CLAIMS FOR CONTRIBUTION UNDER OHIO REV. CODE § 2307.32-.33 FOR THE PAYMENT OF ANTITRUST JUDGMENTS AGAINST BESSEMER FOR WHICH PENN CENTRAL WAS JOINTLY AND SEVERALLY LIABLE AND IS PRIMARILY RESPONSIBLE, BUT HAS PAID NOTHING.
 III. THE COURT BELOW ERRED TO PLAINTIFFS' PREJUDICE BY CONSIDERING AND GRANTING PENN CENTRAL'S MOTION FOR SUMMARY JUDGMENT DISMISSING PLAINTIFFS' CLAIMS FOR COMMON LAW INDEMNITY FOR ANTITRUST JUDGMENTS AGAINST BESSEMER FOR WHICH PENN CENTRAL IS PRIMARILY RESPONSIBLE, AND FOR WHICH BESSEMER IS RESPONSIBLE ONLY VICARIOUSLY, PASSIVELY, AND SECONDARILY.
We find none of these contentions have merit, and affirm the trial court's judgment.
 PROCEEDINGS BELOW
The complaint in this case was filed on May 26, 1994. It alleges that USX, BLE, Penn Central, and other railroads were named defendants in several antitrust actions in U.S. district courts throughout the United States. Ten of these cases were eventually consolidated in multidistrict litigation known as "MDL 587" in the Eastern District of Pennsylvania.
The MDL plaintiffs' claims against Penn Central were dismissed on the ground that those claims were discharged in Penn Central's bankruptcy reorganization proceedings. USX and BLE assert they asked the federal court for leave to add crossclaims or third-party claims against Penn Central for indemnity and contribution, but the federal court never ruled on this request. *Page 23 
All remaining defendants except USX and BLE settled with the MDL plaintiffs before or during the trial conducted in 1989. The jury found BLE liable for federal and state antitrust violations in the amount of approximately $600 million after trebling damages under federal law and doubling them under Ohio law. This award was upheld on appeal and was paid by USX and BLE.
In the present action, USX and BLE contended that Penn Central was liable to indemnify them at common law because its responsibility for the MDL plaintiffs' injury was primary and active while the liability of USX and BLE was secondary and passive. USX and BLE alternatively claimed Penn Central was jointly and severally liable for the MDL plaintiffs' injuries and therefore was liable to USX and BLE for contribution.
On September 15, 1994, this action was stayed on the parties' stipulation, pending a decision by United States Bankruptcy Judge John P. Fullam on Penn Central's motion for an order requiring USX and BLE to dismiss the complaint in this case. A letter to the court from Penn Central's counsel dated November 1, 1994, indicated that Judge Fullam had restrained USX and BLE from prosecuting their claims in this action. Nevertheless, this action remained pending and inactive for nearly two years, when the trial court set the matter for a case management conference. Thereafter, the trial court entered an order nunc pro tunc
reinstating this case to the active docket because the related federal litigation was "resolved."
On November 21, 1996, USX and BLE moved the court for partial summary judgment, asserting that Penn Central was bound by the judgment in MDL-587 and was barred from relitigating certain facts.[1] Penn Central filed its brief in opposition on February 7, 1997. Reply and surreply briefs were filed with leave of court in March and April 1997.
On January 28, 1998, more than nine months after the last brief was filed on plaintiffs' motion for partial summary judgment, the court ordered the "[p]arties to submit briefs/motions on the issues of contribution of [sic] indemnification * * *." In response, USX and BLE filed a memorandum; Penn Central filed a motion for summary judgment. USX and BLE responded to this motion, and Penn Central replied.
On May 29, 1998, the trial court entered the following final order: *Page 24 
 After thoroughly reviewing the entire case file, all briefs submitted by the respective parties and the exhibits and authorities attached thereto, and after construing the evidence most strongly in favor of Plaintiff USX Corporation and Bessemer and Lake Erie Railroad Company ("Plaintiff"), this Court concludes that: (1) there, exist no genuine issues of material fact which would otherwise preclude this Court from granting Summary Judgment in favor of Defendant, Penn Central Corp. n/k/a American Premier Underwriters, Inc. ("Defendant"), as to all counts and/or claims advanced by Plaintiff; (2) that Defendant is entitled to judgment as a matter of law with respect to all counts and/or claims advanced by Plaintiff; and (3) that reasonable minds can come to only one conclusion, and that conclusion is adverse to Plaintiff. Based on the foregoing, Defendant's April 1, 1998 Motion for Summary Judgment is well-taken and is granted in its entirety. IT IS SO ORDERED. FINAL.
USX BLE timely appealed from this ruling on June 23, 1998.
 LAW AND ANALYSIS I. Alleged Waiver of Affirmative Defenses.
In their first assignment of error, USX and BLE contend that the trial court erred by failing to find Penn Central had waived the affirmative defenses upon which it secured summary judgment. USX and BLE argue Penn Central should have raised these defenses in opposition to the motion for partial summary judgment that they filed more than one year before Penn Central's summary judgment motion.
USX and BLE do not identify the affirmative defenses that they claimed Penn Central waived; however, we assume they refer to one or more of the defenses raised in Penn Central's answer.
The failure to raise an affirmative defense in opposition to a motion for partial summary judgment cannot be viewed as a voluntary relinquishment of the right to assert it. For example, a defendant might validly choose not to respond to a partial summary judgment motion at all. The defendant might concede that plaintiff had established the elements of his or her claim alleged in the motion yet continue to assert that it is entitled to judgment, either because some other element of the claim cannot be proved or because of an affirmative defense. Alternatively, the defendant could choose to respond directly to the arguments raised in a partial summary judgment motion rather than rely upon affirmative defenses.
Having preserved the affirmative defenses in its answer, Penn Central did not waive its affirmative defenses by failing to raise them again in opposition to a plaintiff's motion for partial summary judgment on separate issues. Because *Page 25 
USX and BLE were not seeking a final judgment, Penn Central could assume it would have later opportunities to raise its affirmative defenses, if necessary. Therefore, the court cannot assume Penn Central relinquished any right by failing to raise an affirmative defense in opposition to the motion of USX and BLE for partial summary judgment.
Accordingly, the first assignment of error is overruled.
 II. Contribution.
The second assignment of error asserts the trial court erred by granting judgment for Penn Central on the contribution claim of USX and BLE. USX and BLE claim Penn Central was jointly and severally liable, and primarily responsible, for the MDL plaintiffs' claims.
There is no express or implied federal statutory or common law right of contribution to a judgment under the Sherman Act. TexasIndus. v. Radcliff Materials (1981), 451 U.S. 630. Nevertheless, USX and BLE argue they are entitled to contribution under Ohio law. R.C. 2307.32 (A) provides:
 Except as otherwise provided in this section or section 2307.33 of the Revised Code, if two or more persons are jointly and severally liable in tort for the same injury or loss to person or property * * *, there is a right of contribution among them even though judgment has not been recovered against all or any of them. The right of contribution exists only in favor of a tortfeasor who has paid more than that tortfeasor's proportionate share of the common liability, and that tortfeasor's total recovery is limited to the amount paid by that tortfeasor in excess of that tortfeasor's proportionate share. No tortfeasor is compelled to make contribution beyond that tortfeasor's own proportionate share of the common liability. There is no right of contribution in favor of any tortfeasor who intentionally has caused or intentionally has contributed to the injury or loss to person or property * * *
It is not clear whether USX and BLE contend that this statute permits them to obtain contribution from Penn Central on the MDL plaintiffs' judgment for Sherman Act violations. We have found no authority to support such a contribution claim under Ohio law, and appellants have cited none.[2] Such a claim *Page 26 
would be fraught with concerns about federal-state relations that the parties have not addressed. See California v. ARC America Corp.
(1989), 490 U.S. 93; Northwest Airlines, Inc. v. Transport WorkersUnion (1981), 451 U.S. 77, 97 n. 38; cf. Medina Agricultural Soc. v.Swagler (1987), 34 Ohio App.3d 336 (refusing to imply right of contribution under state law for discrimination claims under Title VII). Accordingly, we will assume that appellants argue only that they are entitled to contribution to the judgment for violations of Ohio's Valentine Antitrust Act, R.C. Chapter 1331.
First, we must determine whether a violation of the Valentine Act is a tort[3] for which contribution may be available under R.C. 2307.32. The parties apparently assume it is, so we will not consider this question at length. Though statutory, claims for antitrust violations are generally considered analogous to tort claims. See Pinney Dock Transp. Co. v. Penn Central Corp. (N.D. Ohio 1982), 1982-1 Trade Cases ¶ 64, 687, and authorities cited therein. Civil conspiracy is considered an intentional tort.Williams v. Aetna Fin. Co. (1998), 83 Ohio St.3d 464, 475.
Penn Central contends BLE and USX are not entitled to contribution because they intentionally caused or contributed to the MDL plaintiffs' loss. Penn Central argues that BLE's liability was based on its voluntary and intentional participation in a conspiracy to prevent the establishment of an alternative system for transporting iron ore that would have competed with the railroads' monopoly system. The intended victims of this conspiracy were the plaintiffs in MDL-587, the private docks and trucking companies that would have provided the alternative transportation, and the steel mills that would have used *Page 27 
the alternative system at reduced cost. Therefore, Penn Central claims, BLE and USX intentionally caused or contributed to the injury, or loss to the MDL plaintiffs and has no right of contribution.
In response, BLE and USX argue that in order to demonstrate that they have no right of contribution, Penn Central must show that BLE specifically intended to (1) violate the antitrust laws, (2) cause injury to each of the MDL plaintiffs, and (3) inflict the type of harm the MDL plaintiffs actually suffered. They apparently claim they "unintentionally" violated the antitrust laws and did not intend to cause the particular injury to the particular plaintiffs in the MDL litigation.
Such specific intent is not required to bar contribution under the terms of R.C. 2307.32. We agree with the common sense construction of R.C. 2307.32 propounded by the trial court in Pinney Dock Transp. Co. v. Penn Central Corp.
(N.D. Ohio 1998), 991 F. Supp. 908, affirmed (C.A.6, Nov. 16, 1999), App. Nos. 98-3178, 98-3179, unreported. The statute precludes contribution in favor of a party who intentionally causes or contributes to an injury; it does not require intent to violate the law or intent to cause a particular injury to a particular party.
The evidence presented to the trial court showed BLE pleaded no contest to a criminal indictment for violating the Sherman Act by engaging in the iron ore conspiracy that was the subject of MDL 587. Its resulting conviction was affirmed on appeal. UnitedStates v. Bessemer Lake Erie RR. Co. (D.C. Cir. 1983),717 F.2d 593. A necessary element of the crime for which BLE was convicted was that BLE intended to restrain trade. Pinney Dock,991 F. Supp. 908. The criminal conviction estops BLE and USX from asserting a contradictory civil claim. Walker v. Schaeffer (6th Cir., 1988),854 F.2d 138; Pinney Dock, 991 F. Supp. 908, 911-12.
USX and BLE argue that Crim.R. 11 (B) (2) and Evid.R. 410 prohibit the use of BLE's no contest plea against them. Because the plea at issue here was not entered in an Ohio court, Crim.R. 11 has no applicability. Evid.R. 410 renders inadmissible "[a] plea of no contest or the equivalent plea from another jurisdiction * * * in any civil or criminal proceeding against the defendant who made the plea." Clearly, the rule prohibits the affirmative use of a no contest plea in a claim against a former criminal defendant to sub subject him or her to additional civil or criminal liability. However, this does not mean a former criminal defendant should be able to assert a claim that contradicts the judgment of conviction against him or her. Use of the conviction as a defense against a claim by a former criminal defendant is not prohibited. See Walker v. Schaeffer (6th Cir., 1988), 854 F.2d 138, 143. *Page 28 
We find there was no genuine issue as to any material fact, and, as a matter of law, BLE was an intentional tortfeasor that was precluded from obtaining contribution under R.C. 2307.32 (A). Therefore, we reject the second assignment of error and affirm the judgment in favor of Penn Central on the contribution claim of USX and BLE.
 III. Indemnity.
In their final assignment of error, USX and BLE argue that the court improperly granted summary judgment to Penn Central on their indemnity claim.
 Indemnity may be defined as the right, arising out of an implied contract, of a person who has been compelled to pay what another should pay, to obtain complete reimbursement. The courts in Ohio have recognized the distinction between one who is actually at fault, and another who, by reason of his relationship with the wrongdoer or by operation of law, has incurred tort liability without personal fault for the acts committed by such wrongdoer.
Allstate Ins. Co. v. U.S. Assoc. Realty, Inc. (1983), 11 Ohio App.3d 242,246.
Although USX and BLE argue that they were secondarily or vicariously liable for Penn Central's wrongful conduct, they were found liable in the MDL-587 cases because they participated in an unlawful conspiracy. BLE was held primarily liable for the actions of its co-conspirators in furtherance of the conspiracy. Indemnity is not permitted between co-conspirators, who are joint tortfeasors. Pinney Dock Transp. Co. v. Penn Central Corp.
(C.A.6, Nov. 16, 1999), App. Nos. 98-3178, 98-3179, unreported;Bessemer Lake Erie RR. Co. v. American Premier Underwriters, Inc.
(C.A.6 Cir. May 14, 1999), 1999 U.S. App. LEXIS 9832, unreported;Developers Diversified Realty Corp. v. Cicchini (Sept. 30, 1996), Stark App. No. 1996CA00007, unreported. Therefore, the trial court properly granted summary judgment in favor of Penn Central on the indemnity claim of USX and BLE. The third assignment of error is overruled.
Both sides have expended large quantities of ink in arguing the collateral estoppel or res judicata effects of prior orders of various federal court. Because our independent conclusions here are in accord with the rulings of the federal courts, we need not reach these issues.
The trial court's judgment is affirmed.
It is ordered that appellee recover of appellants its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JOHN T. PATTON. J. CONCURS
 TIMOTHY E. McMONAGLE, P.J., CONCURS IN JUDGMENT ONLY
 _______________________ JUDGE KENNETH A. ROCCO
[1] Specifically, appellants asked the court to find that the following facts were established in the MDL litigation: (1) that BLE and Penn Central participated in a conspiracy to restrain competition in the transportation of iron ore, in violation of federal and Ohio antitrust laws; (2) the MDL plaintiffs incurred antitrust injury as a result; and (3) the MDL plaintiffs' damages totalled at least $497,352,951 (after doubling and trebling under federal and Ohio law, and after offsets for settlements with other defendants).
[2] The authorities cited by appellants suggest the availability of a claim under Ohio law for contribution to a state law antitrust judgment, Pinney Dock Transp. Co. (N.D. Ohio 1982). 1982-1 Trade Cases (CCH) ¶ 64, 687, although that court later found that the antitrust conspirator was an intentional tortfeasor precluded from obtaining contribution as a matter of law under R.C. 2307.32 (A).Pinney Dock Transp. Co. v. Penn Central Corp. (N.D. Ohio 1998),991 F. Supp. 908, affirmed (C.A.6, Nov. 16, 1999), App. Nos. 98-3178, 98-3179, unreported. Another authority discusses claims for contractual indemnity with respect to a federal antitrust judgment, Cimarron Pipeline Constr., Inc. v. Nat'l Council on Comp.Ins. (W.D. Okla. 1992), 1992 U.S. Dist. Lexis 18560.
[3] R.C. 2307.32 (A) does not differentiate between intentional and unintentional torts, but between tortfeasors who intentionally (or unintentionally) cause or contribute to an injury or loss. The distinction is narrow, but it may be significant. Proof of a civil violation of antitrust laws does not necessarily require proof of an unlawful intent; it may also be proved by demonstrating that the defendant's conduct had an anticompetitive effect. McLain v. RealEstate Bd. (1980), 444 U.S. 232, 243; United States v. ContainerCorp. of Am. (1969), 393 U.S. 333; Pinney Dock Transp. Co. V.Penn Central Corp., 1982-1 Trade Cases ¶ 64, 687. Thus, it is at least theoretically possible for an antitrust conspirator to demonstrate that it is entitled to contribution because it did not intentionally cause or contribute to the plaintiff's loss, though its conduct had an anticompetitive effect.
Nonetheless, contribution is not a concept easily applied to a conspiracy. Each member of a conspiracy acts for the group, so it would appear impossible to apportion liability. The punitive nature of the duple damages provisions also limits the applicability of the concept of proportionate liability. We need not address these difficult questions here, however, because we find as a matter of law that BLE acted intentionally. *Page 29